UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SALENA FAWN CALHOUN,**

    **Plaintiff,**

v.                                            **Case No. 8:23-cv-732-AAS**

**MARTIN O'MALLEY,**
**Commissioner of the Social**
**Security Administration,**[1]

    **Defendant.**
_____/

## ORDER

Salena Fawn Calhoun requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. Section 405(g). (Docs. 23, 25). After reviewing the record, including the transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the memoranda submitted by the parties, the Commissioner's decision is **AFFIRMED**.

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of the Social Security Administration.

1

## I.  PROCEDURAL HISTORY

Ms. Calhoun applied for SSI on DIB on January 24, 2019 and January 31, 2019, respectively, with an alleged disability onset date of August 4, 2018. (Tr. 231–47, 270). Disability examiners denied Ms. Calhoun's applications. (Tr. 164). Mr. Calhoun requested and received a hearing, which was held on May 14, 2020, and the ALJ issued an unfavorable decision on May 27, 2020. (Tr. 7–20, 68–104). Ms. Calhoun amended her alleged onset date to April 26, 2019, during the hearing before the ALJ. (Tr. 10). Ms. Calhoun timely requested Appeals Council review of the ALJ's hearing decision. (Tr. 225–27). The Appeals Council denied her request for review on February 1, 2021. (Tr. 1). Ms. Calhoun appealed.

On April 6, 2022, the District Court for the Middle District of Florida remanded the ALJ's decision for further proceedings. (Tr. 514–15). On June 24, 2022, the Appeals Council issued notice of the order to remand the matter for a new hearing and decision. (Tr. 518–21). Following a hearing on November 22, 2022, during which Ms. Calhoun's reverted her alleged disability onset date to August 4, 2018, the ALJ issued an unfavorable decision on February 1, 2023. (Tr. 427–48). Ms. Calhoun now requests review of the ALJ's February 1, 2023 decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Background

Ms. Calhoun was forty-one years old on her alleged disability onset date of August 4, 2018. (Tr. 445). Ms. Calhoun has a limited education and past relevant work experience as a cleaner. (*Id.*). Ms. Calhoun alleges disability due to degenerative disc disease, peripheral neuropathy, back problems, sciatica, depression, posttraumatic stress disorder (PTSD), osteoarthritis in back, high blood pressure, thyroid disorder, and bone spurs. (Tr. 270).

### B. Summary of the Decision

The ALJ must follow five steps when evaluating a claim for disability.[2] 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if a claimant is engaged in substantial gainful activity,[3] she is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to perform basic work activities, she has no severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims

---

[2] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[3] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. §§ 404.1572, 416.972.

based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC). *Id.* Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing work that exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Here, the ALJ determined Ms. Calhoun had not engaged in substantial gainful activity since August 4, 2018, the alleged disability onset date. (Tr. 433). The ALJ found Ms. Calhoun has these severe impairments: degenerative disc disease of the lumbar and cervical spine; thoracolumbar scoliosis; affective disorder, anxiety, personality disorder, PTSD, and obesity. (Tr. 434). However, the ALJ concluded Ms. Calhoun's impairments or combination of impairments failed to meet or medically equal the severity of an impairment in the Listings. (*Id.*).

The ALJ found Ms. Calhoun had an RFC to perform sedentary work,[4] except:

> [Ms. Calhoun] requires the option to sit or stand alternatively for a brief change in position every 45 to 60 minutes while remaining on task; can never climb ladders, ropes, or scaffolds; can never crawl; can occasionally stoop, crouch, and kneel; can never balance on slippery, uneven, or erratically moving surfaces; can occasionally reach overhead bilaterally, but has no limitations reaching in any other direction or plane; can never be exposed to unprotected heights; can never operate dangerous machinery; can tolerate occasional exposure to extreme cold and industrial vibration; is limited to routine and repetitive tasks performed in a work environment free from fast-paced assembly-line type production requirements, involving only simple work-related decisions, and with few, if any, workplace changes; can occasionally interact with coworkers, but is unable to perform tandem tasks; and can occasionally interact with the public.

(Tr. 436–37).

Based on these findings and the testimony of a vocational expert (VE), the ALJ determined Ms. Calhoun could not perform her past relevant work. (Tr. 445). However, the VE testified that an individual with Ms. Calhoun's age, education, work experience, and RFC could perform other jobs that exist in significant numbers in the national economy. (Tr. 446). Specifically, Ms. Calhoun can perform the jobs of addresser, scanner, and folder. (*Id.*). As a

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

5

result, the ALJ concluded Ms. Calhoun was not disabled. (Tr. 447).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also*

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

**B.     Issue on Appeal**

Ms. Calhoun raises one issue supporting her request for relief. Ms. Calhoun argues the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of consultative examiner Deborah Mohn, Ph.D. (Docs. 23, 25). In response, the Commissioner contends the ALJ properly considered Dr. Mohn's opinion and found that it was not persuasive. (Doc. 24).

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. Social Security Ruling (SSR) 96-8p provides that the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" which "means 8 hours a day, for 5 days a week, or an equivalent work schedule." 1996 WL 374184, at *1; *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (stating that the RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments"). In assessing a claimant's RFC, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of

treating, examining, and non-examining medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); s*ee also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). The revised regulations (i.e., 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c) apply here. Those regulations require that an ALJ apply the same factors in the consideration of the opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant;[5] (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c); 416.920c(c).

Supportability and consistency are the most important factors in the evaluation, and the ALJ must explain the consideration of those two factors.

---

[5] This factor combines consideration of these issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

8

20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1).[6] In sum, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record. *Baker v. Comm'r of Soc. Sec.*, No. 6:22-CV-1179-EJK, 2023 WL 4946510, at *2 (M.D. Fla. Aug. 3, 2023).

---

[6] The ALJ may—but is not required to—explain how the ALJ considered the remaining three factors (i.e., relationship with claimant, specialization, and "other factors"). 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) ("The new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'") (quoting *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam).

9

Here, in April 2019, Ms. Calhoun presented to Dr. Mohn for a consultative psychological evaluation. (Tr. 400). Ms. Calhoun reported she received special education for dyslexia but dropped out of school in the tenth grade and did not obtain her GED or any other training. (*Id.*). Ms. Calhoun stated she suffered from depression and experienced panic attacks when around strangers. (Tr. 401). Dr. Mohn noted Ms. Calhoun struggled to move from one task to another, could complete serial sevens, and could not spell "world" forwards or backwards. (*Id.*). Dr. Mohn found Ms. Calhoun's short-term memory and memory for significant dates or personal historical information were below average. (*Id.*). Dr. Mohn also found Ms. Calhoun's fund of information, abstraction, insight, and judgment were below average. (*Id.*). Dr. Mohn described Ms. Calhoun's general presentation as anxious and histrionic. (*Id.*).

Dr. Mohn diagnosed Ms. Calhoun with generalized anxiety disorder, episodic paroxysmal anxiety (panic disorder), borderline intellectual functioning, borderline personality disorder, and histrionic personality disorder. (*Id.*). Dr. Mohn opined Ms. Calhoun had moderate limitations in her ability to maintain a regular schedule with punctuality; and maintain socially appropriate appearance, behavior, and other aspects of social interaction in the workplace. (Tr. 403). In addition, Dr. Mohn opined Ms. Calhoun had markedly severe limitations in her ability to maintain attention/concentration and pace

10

for periods of at least two hours; maintain regular work attendance without missing more than one to two days per month because of psychological symptoms; appropriately seek and accept instructions and criticism from supervisors; and manage finances reliably and independently. (*Id.*). Finally, Dr. Mohn opined Ms. Calhoun had an extreme limitation in her ability to sustain an ordinary work routine without the need for special instruction. (*Id.*).

The ALJ analyzed Ms. Calhoun's mental health treatment records, along with the other medical evidence, and found Ms. Calhoun had the RFC to perform limited sedentary work with additional mental health limitations. (Tr. 435–45). As for Ms. Calhoun's mental health limitations, the ALJ found Ms. Calhoun "is limited to routine and repetitive tasks performed in a work environment free from fast-paced assembly-line type production requirements, involving only simple work-related decisions, and with few, if any, workplace changes; can occasionally interact with coworkers, but is unable to perform tandem tasks; and can occasionally interact with the public." (Tr. 436–37).

In reaching the RFC assessment, the ALJ considered Dr. Mohn's April 2019 consultative psychological evaluation, along with other record evidence, and found Dr. Mohn's evaluation unpersuasive. (Tr. 400–03, 443). The ALJ noted the extreme mental limitations contained in Dr. Mohn's psychological evaluation. (*Id.*). However, the ALJ stated "Dr. Mohn's opinion was accompanied by a consultative examination report," but "the findings from that

11

report do not support the degree of limitations found by Dr. Mohn." (Tr. 443). For example, Dr. Mohn listed "below average" findings in memory, fund of information, abstractions, and insight and judgment, but did not consider Ms. Calhoun to be "impaired" in those areas. (*Id.*). The ALJ also stated that "below average functioning does not necessarily correspond to a finding of disability or even impairment." (*Id.*).

In explaining why Dr. Mohn's opinion was inconsistent with the other medical evidence, the ALJ cited the mental health findings of state agency psychological consultants, Guendalina Ravello, Ph.D. and Damarys Sanchez, Psy.D. (Tr. 442–43); *See* 20 C.F.R. §§ 404.1520c, 416.920c; SSR 17-2p, 2017 WL 3928306 (State agency medical consultants "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act."). Specifically, Drs. Ravello and Sanchez opined Ms. Calhoun could perform some simple work with routine instructions, and maintain attention and concentration for two-hour increments, findings inconsistent Dr. Mohn's opinion. (Tr. 442–43).

After reviewing Drs. Ravello and Sanchez mental health assessments, the ALJ found medical expert Joseph Carver, Ph.D.'s November 2022 opinion was "more persuasive" because he had "the opportunity to review the complete

12

medical file, aside from evidence submitted after the decision." (Tr. 441, 443).[7] The ALJ stated Dr. Carver's diagnoses of an affective disorder, anxiety, a histrionic personality disorder, and PTSD were confirmed in the treatment notes. (Tr. 440, 2365–67). The ALJ cited Dr. Carver's opinion that Ms. Calhoun's depression and anxiety were mild. (*Id.*). In addition, Dr. Carver "opined that [Ms. Calhoun] could understand simple instructions, but would have difficulty with complex instructions, and that she retained sufficient attention for routine repetitive activities, but due to difficulty with sustained attention, she should avoid jobs with environmental hazards, such as moving equipment and machinery." (*Id.*). Dr. Carver opined Ms. Calhoun would have problems with getting along with others, requiring limiting her to "occasional contact with supervisors, co-workers, and the general public." (*Id.*). Thus, the ALJ included limitations in the RFC assessment to accommodate these mild limitations, as well as additional limitations to accommodate Ms. Calhoun's moderate limitations in interacting with others. (Tr. 441).

The ALJ also discussed consultative examiner Richard Belsham, Ph.D.'s September 2021 opinion. (Tr. 443–44). Dr. Belsham opined Ms. Calhoun could follow "simple instructions, but that she was unable to focus, had poor

---

[7] The ALJ noted Dr. Carver is a medical expert and "a clinical psychologist with extensive professional experience." (Tr. 440). The ALJ may considered a doctor's specialization. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

adaptability, had a variable ability to relate to others, was unreliable, and was unable to deal with stress." (Tr. 1556–60). The ALJ found Dr. Belsham's opinion was "somewhat persuasive to the extent that it support[ed] the opinion of Dr. Carver" and it was "fairly well supported as it was accompanied by the consultative psychological examination report." (Tr. 443–44).

As for supportability and consistency, the ALJ addressed Dr. Mohn's "below average" exam findings and found discrepancies between Dr. Mohn's findings and the objective medical evidence. (Tr. 400–03, 443). The ALJ properly considered Dr. Mohn's phycological evaluation and included all supported limitations in the RFC. The regulations state an ALJ does not have to defer to any medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ properly addressed the factors of supportability and consistency in her medical opinion analysis and finding Dr. Mohn's opinion was unpersuasive. (Tr. 443); *See Sesler v. Comm'r of Soc. Sec.*, No. 8:20-cv-2835-DNF, 2021 WL 5881678, at *6 (M.D. Fla. Dec. 13, 2021) ("As long as the ALJ properly evaluated the medical opinion–as he has done here– the only issue is whether substantial evidence supports the RFC assessment.").

Along with the objective medical evidence, the ALJ addressed Ms. Calhoun's reported activities, such as spending time at the beach, going out to lunch, doing chores, driving, and going shopping. (Tr. 435–36, 286–93, 1612–27, 1673–90); *See Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144,

at *4 (11th Cir. Jan. 10, 2022) (finding substantial evidence including the claimant's daily activities supported the ALJ's finding that a medical opinion was inconsistent with the record as a whole and not persuasive). These activities are inconsistent with Ms. Calhoun's disability claims. In addition, Ms. Calhoun's treatment records frequently noted a cooperative mood, good eye contact, and appropriate behavior. (Tr. 413–26, 435, 928–57, 1662–72, 1910–18, 1921–2152). The ALJ further discussed evidence of Ms. Calhoun's symptom magnification and exaggeration of her treatment history, such as her reports that she was "barely able to move" and "that she had undergone 40 and then 50 separate surgeries for her physical impairments." (Tr. 434, 436, 441, 900–10, 1490–1504). There is no medical evidence substantiating these claims.

Despite Ms. Calhoun's April 2018 alleged onset disability date, Ms. Calhoun did not seek mental health treatment until March 2020, two years later. (Tr. 441, 928–57). The ALJ found the "extended period after [Ms. Calhoun's] alleged onset date without mental health treatment belies her allegations that she was disabled due to her mental condition during that time." (Tr. 441). The ALJ addressed evidence of Ms. Calhoun's opioid abuse and drug-seeking behaviors, such as multiple visits to the emergency room but leaving against medical advice before toxicology screenings. (Tr. 434, Tr. 1641–61).

The court disagrees with Ms. Calhoun's statement that the ALJ "cherry-

15

picked opinions agreeing with the RFC to discount the consistency of Dr. Mohn's opinion." The ALJ discussed Ms. Calhoun's mental health records throughout the RFC assessment, including Dr. Mohn's psychological evaluation. As the Commissioner points out, even where the evidence could support a different conclusion, the ALJ's decision must be affirmed if it is supported by substantial evidence and based on proper legal standards. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). And here, the ALJ's findings are substantially supported by the record.

Ultimately, it is the province of the ALJ to determine Ms. Calhoun's ability to work. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). And the ALJ is not required to base her RFC finding on one doctor's opinion. *See Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014). Here, the ALJ applied the proper legal standards, provided a detailed analysis of the evidence of record, and sufficiently articulated the reasons why she did not find Dr. Mohn's findings entirely supported by or consistent with the record evidence. Thus, the ALJ's decision is due to be affirmed.

## IV.   CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED,** and the Clerk is directed to enter judgment in favor of the Commissioner.

**ORDERED** in Tampa, Florida on September 9, 2024.

_____
AMANDA ARNOLD SANSONE
United States Magistrate Judge